SNEED, J.,
delivered the opinion of the court:
The questions involved in this case have been so often and so thoroughly discussed in our adjudged cases, that it is scarcely necessary to do more than state our conclusions.
The original bill was brought by the heirs and devisees of the late Eppy White, for a partition of his estate, and for other purposes, and the main questions in controversy depend for their solution upon the proper construction of his will. He died in 1857, leaving a widow and seven children surviving him. The widow was left in possession of the real and personal estate of the testator under provisions of the will herein to be considered and construed. She intermarried with the defendant, Robert McKenna, and they lived at the testator’s late homestead in Shelby county, until hex death, in 1873. The defendant McKenna, has since intermarried with Anna Blackstone, a granddaughter of the testator, who is also a defendant herein, and who, with her said husband, consents to the partition claimed by the complainants. The complainants are the grandchildren of Eppy White, the testator, all his children being dead. The complainant Owens, and others, are the children and heirs of Mary A. Owens, formerly Mary A. White, a daughter of the testator. Mrs. Owens died after her father, but during the lifetime of her mother.
. The complainants, her children, claim her interest in the estate, while on the other hand, the complainants in the *192 cross-bill of Galloway and others, claim Mrs. Owen’s interest under a sale and assignment by her, in her lifetime, to one Cato, from whom they claim to have purchased. The defendant, Mrs. Hawley, was the wife of O. L. White, a son of the testator, and of this marriage a son was bom, who died as did his father also, after the death of the testator, but during the lifetime of the testator’s widow. The defendant claims an interest in the estate, by inheritance from her said deceased son. It is claimed by complainants that their grandmother was ’Only entitled, under the will, to support out of the testator’s estate and not to a life estate, or other estate, that would entitle her husband, McKenna, to hold and enjoy the rents and profits thereof, and they therefore demand an account thereof against him. The effect of the chancellor’s ruling upon the demurrer interposed by defendant McKenna was, that under the will the children of Eppy White living at the time of his death, and the children of those who were then dead, took vested remainder in severalty in the estate at his death, and, as a consequence, that Mrs. Owen’s sale of her interest was a valid disposition thereof to her assignees, and that Mrs. Hawley took, by inheritance, her son’s interest- — it being one-seventh share in the estate; that the testator’s -widow took an absolute estate in the personalty and a life estate in the land, and hence complainants were not entitled to the account for rents and profits against the defendant, Mc-Kenna. These points were adjudged upon demurrer, and the case has been brought here by appeal upon these preliminary questions, and submitted for decision out of its order, upon full argument, that the settlement of the estate may not be delayed.
The clauses of the will material to be considered, are as follows: After other provisions, not relevant in this controversy, the third clause of the will is in these words: “I desire that the remainder of my estate, both real and personal, be kept together for the maintenance and support of my beloved wife, Martha White, during her natural life. *193 4th. After the death of my said wife, I desire my executors to take charge of my estate and divide it equally amongst my children, taking into consideration the advances I have made to each, of which I will speak below, and those of my children who are dead at the time, I wish their children to represent their parents and take their parents’ share of my estate. 5th. I earnestly desire and request my executors, in whose honesty and integrity I have the greatest confidence, to aid and assist my wife in the management of my estate during her life, to buy or to sell anything on the place as they may see proper, and after her death I wish them to use their own discretion as to the time when they will sell or divide my estate, and I hereby authorize and empower them to keep up my plantation, if, in their opinion, it should not be a favorable time for selling at the time of the death of my wife; to keep it up for a term of years if they see proper; to buy and sell anything that may be necessary, until a more favorable time arrives lor selling and dividing the whole.”
As we have seen, the testator liad seven children, one son and six daughters, living at the time of the preparation of the will, in 1853. These children are named in a subsequent clause of the will in connection with his directions to the executors as to the collation of advancements. At the time of the filing of this bill, on the 10th of April, 1874, not one of these children were, living. What interest did these children take under the will? Was it a vested interest in remainder, taking effect at testator’s death in severalty, or is the testamentary disposition to a class of persons who may answer the description in the will at the time of the widow’ death? The question is to be determined by no subtle or artificial rules of construction, but by the will itself, upon the most easy, reasonable and natural reading of its terms, as reflecting tlie intention of the testator, lie has unquestionably grouped ‘the objects of his bounty into a specific clags, but did he intend to vest *194 tbe estate in severalty at bis deat-b, to be enjoyed in the future, and after the death of his widow? We find, in looking to the third clause of the will, that he has settled what wre will, at present, call the usufruct of the estate, both real and personal, upon his widow for life. What character of estate this was, we will inquire hereafter. By the fourth clause, he instructs his executors, "after the death of luis wife, to take charge of his estate and divide it equally among his children, and those of his children who are dead at. the time, he wishes their children to represent their parents and take their parents’ share of the estate/'’
We have a number of adjudged cases holding that where a bequest is made to a class of persons, subject to fluctuations by increase or diminution of its number, in consequence of future births or deaths, and the time of payment or distribution of the fund is fixed at a subsequent period, or on the happening of a future event, the entire interest vests in such persons only as at the time fall within the description of persons as constitute such class. 1 Jar. Wills, 295; 1 Rop. Leg., 71 et seq; Satterfield v. Mayes, 11 Hum., 58; Womack v. Smith, 11 Hum., 483; Beasley v. Jenkins, 2 Head, 192; Fulkerson v. Bullard, 3 Sneed, 260. The presumption is in favor of the estates vesting in presentí, and yields only to a manifest contrary intention to be found in the will. It is thus stated in the text-books. If the bequest be to a class, all who are embraced in the class at the time the bequest takes effect, will be allowed to take. And as an interest devised under a will ordinarily taires effect at the death of the testator, unless some other time be appointed for it to come into operation, it will be so regarded, and the class ascertained as of that time. But where there is an intermediate estate the class is to be determined at the time the estate vests in such class in possession. 1 Redf. Wills, 385; Knight v. Knight, 3 Jones Eq., 167; 2 Redf. Wills, 330; Parrish v. Groomes, 1 Tenn. Ch. R., 581; Puryear v. Edmondson, 4 Heis., 54.
*195 The language of the will is: “After the death of my wife I desire my executors to take charge of my estate and divide it equally among my children, and those of my children who are dead at the time I wish their children to represent their parents and take their share of my estate.” We hold that these words vest the remainder in the children or grandchildren living at the termination of the life estate, as a class, and not in severalty, and it results that Mrs. Hawley takes no interest — her son, from whom she claimed the inheritance, having died before the widow, and that Mrs. Owen could only dispose of her defeasible interest dependent on her own survivorship of her mother. Her children, therefore, who are the grandchildren of the testator, take her share in preference to the purchasers under her.
In regard to the widow’s interest in the estate of her husband, the testator, the court is of opinion that under the will she did not take an absolute estate in the personalty, or a technical life estate in the realty, but the usufruct of both to the extent of all products and profits thereof.
It' is manifest from the injunctions upon the executors, “to keep the estate together” for the support and maintenance of his wife during life, and the executory bequest to the class of persons in whose favor he creates the trust in said executors, that he contemplated no absolute right of disposition of the personalty in his widow, but we think the whole profits, products, and usufruct of both personalty and realty belonged to the widow under the will. He invests the executors and not the widow with the right “to buy or to sell anything on the place,” and enjoins it upon them to‘assist her in the management of his estate. Having first carved out an ample support and maintenance for her, under the auspices of his executors, in the rents, profits, and product of the estate, the prevailing idea of the will is that the estate should he managed with such skill and prudence as to result to1 the best advantage of those who were to take the estate after the widow’s death, but without any restriction upon the widow as to the use *196 and-enjoyment of the products of the estate. This is plainly apparent from the large discretion lodged in the executors by the fifth clause of the will, as to the time and circumstances under which they are to divide the estate after the termination of the widow’s interest. A bequest to trustees for the maintenance and support of a widow, with an injunction upon them to keep the estate together, to assist her in its management, and to buy and sell of the personalty when necessary, can, in no manner, be construed into an absolute estate in the widow in the personal estate, or a life estate, in its proper sense, in the realty. In the case in judgment, the bequest is not directly to the widow, but a trust in her behalf is reposed in the executors, which, we think, is plainly significant of the testator’s intention in the matter. She may manage the estate under their advice and assistance, and they, and not the widow, may buy and -sell as may be necessary to keep up the estate. We hold that the widow has no absolute right of disposition of the personalty, and hence, that she was entitled 'to the use and occupation of the real estate for life, as aforesaid, to the extent of all the rents and profits of the whole estate. The estate will be distributed according to the principles of this opinion. The right of the parties to- an account against the defendant McKenna, if they have any, will depend upon the rights he acquired under the marital relation — they being none other or greater over the property than those of the- testator’s widow, who became the said defendant’s wife. If he has been guilty of waste he would be liable to account to the complainants.
It results, in the opinion of the court, that the decree of the chancellor must be modified as herein indicated.
By an agreement of the parties of record, the costs'of this appeal will be adjudged against defendant McKenna, as administrator with the will annexed, which will he adjusted in his settlement. Let the decree be modified accordingly, and tbe cause remanded.